Aarons, J.
 

 Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered April 17, 2015, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the second degree.
 

 Defendant was charged in an indictment with criminal possession of a weapon in the second degree stemming from an incident where police detectives, after a traffic stop, found a loaded handgun in a vehicle driven by defendant’s girlfriend and in which defendant was a passenger. Defendant moved to suppress the seized handgun and the videotaped interview with the detectives wherein he admitted that the handgun was his. After a suppression hearing, County Court denied the motion and, following a jury trial, defendant was convicted as charged. County Court subsequently sentenced defendant, as a second violent felony offender, to a prison term of 15 years, followed by five years of postrelease supervision. Defendant appeals. We affirm.
 

 Defendant’s contention that the evidence was not legally sufficient to support the conviction is not preserved for our review in light of his general motion to dismiss made at the close of the People’s proof (see People v Morris, 140 AD3d 1472, 1472 [2016], lv denied 28 NY3d 1074 [2016]; People v Coleman, 144 AD3d 1197, 1198 [2016]; People v Brown, 139 AD3d 1178, 1178 [2016]). Because defendant also argues that the verdict was against the weight of the evidence—a claim not subject to preservation requirements—we consider whether the proof was adequate to establish each element of the charged crime (see People v Danielson, 9 NY3d 342, 349 [2007]; People v Montford, 145 AD3d 1344, 1345 [2016], lv denied 29 NY3d 999 [2017]; People v Tompkins, 107 AD3d 1037, 1038 [2013], lv denied 22 NY3d 1044 [2013]). Inasmuch as an acquittal would not have been unreasonable, we weigh the probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony (see People v Bullock, 145 AD3d 1104, 1105 [2016]; People v Scippio, 144 AD3d 1184, 1185 [2016], lv denied 28 NY3d 1150 [2017]). As relevant here, “[a] person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm” outside his or her “home or place of business” (Penal Law § 265.03 [3]).
 

 At trial, Detective Kevin Meehan testified that he was surveilling defendant and, as defendant left a residence, he observed him securing his jacket in an unusual manner and that his waistline appeared “off balance for the type of coat he had on.” Defendant entered the front passenger side of a vehicle that was being driven by his girlfriend. The vehicle was subsequently stopped after Meehan observed defendant’s girlfriend make a U-turn over a double solid line. Detective Timothy Haggerty, who arrived at the scene to provide assistance, testified that, after the traffic stop, he removed defendant from the vehicle. Haggerty conducted a search of the vehicle and found a handgun. He advised a forensic detective about the discovered handgun and took defendant to the police station. At the station, after another detective advised defendant of his Miranda rights, Haggerty interviewed defendant and stated that defendant admitted that the handgun belonged to him.
 
 *
 
 Viewing the evidence in a neutral light, we cannot say that the verdict was against the weight of the evidence (see People v Gunn, 144 AD3d 1193, 1194 [2016], lv denied 28 NY3d 1145 [2017]; People v Martin, 136 AD3d 1218, 1219 [2016], lv denied 28 NY3d 972 [2016]; People v Oliver, 135 AD3d 1188, 1191 [2016], lv denied 27 NY3d 1003 [2016]). To the extent that defendant questioned the veracity of the detectives and denied, at trial, that the gun was his, we defer to the jury’s resolution of credibility issues (see People v Novak, 148 AD3d 1352, 1356 [2017], lv denied 29 NY3d 1084 [2017]; People v Valverde, 122 AD3d 1074, 1077 [2014], lv denied 27 NY3d 970 [2016]).
 

 We disagree with defendant’s claim that County Court’s suppression ruling regarding the seized handgun was erroneous. Initially, we find that the traffic stop of the vehicle in which defendant was a passenger was lawful based upon Meehan’s suppression hearing testimony that he observed defendant’s girlfriend cross over a double solid line and make a U-turn (see People v Kindred, 100 AD3d 1038, 1039 [2012], lv denied 21 NY3d 913 [2013]). We also find that Haggerty’s inventory search was proper. Haggerty testified at the suppression hearing that it was discovered at the traffic stop that the driver’s license of defendant’s girlfriend was suspended. Upon such discovery, both defendant and his girlfriend were asked to exit the vehicle and were handcuffed. According to Haggerty, under the City of Albany Police Department’s standard operating procedures, the vehicle had to be towed because defendant’s girlfriend was not allowed to drive it in light of her suspended driver’s license. Furthermore, under the standard operating procedures, when a vehicle is to be towed, an inventory search is to be conducted and an inventory report is to be prepared documenting the contents of the vehicle to ensure the protection of the vehicle owner’s or occupant’s property. Haggerty stated that an officer did not have the discretion under the standard operating procedures to determine whether to conduct an inventory search. As part of the inventory search, which Haggerty testified was complied with, Haggerty found a loaded handgun in the front seat area of the vehicle. Defendant and his girlfriend were thereafter arrested and brought to the police station by Haggerty. Another police officer at the scene was directed to finish the inventory search.
 

 In view of the written standard operating procedures described by Haggerty and his testimony stating that they were followed and did not provide for any discretion to the officers, we conclude that the inventory search was proper (see People v Boler, 106 AD3d 1119, 1122-1123 [2013]; see generally People v Lee, 29 NY3d 1119, 1120 [2017]). Contrary to defendant’s contention, law enforcement officials at the traffic stop were not obligated to inquire whether defendant was able to drive the vehicle once they learned that defendant’s girlfriend had a suspended license (see People v Walker, 20 NY3d 122, 125 [2012]). Furthermore, even though defendant was only a passenger and not the operator of the vehicle who committed the traffic violation, the police were authorized to direct defendant to exit the vehicle at the traffic stop (see People v Robinson, 74 NY2d 773, 775 [1989], cert denied 493 US 966 [1989]; People v Murray, 58 AD3d 1073, 1075 [2009], lv denied 12 NY3d 786 [2009]). While the inventory report was not admitted into evidence at the suppression hearing because it could not be located, such omission, although troubling, is not fatal under the circumstances of this case. The officer who prepared the inventory report testified that he completed one and was, in fact, “very confident” that he did so. The officer also conducted his own inventory search after Haggerty’s initial search and explained that he started at the front of the car and worked his way to the rear, “recording anything that was in the car from child’s clothing and toys, to CDs, lighters, things of that nature.” The officer likewise stated that he did not have the discretion to determine what items would be listed in the inventory report and that it would “show everything that was either taken out of the vehicle or still in the vehicle.” County
 

 Court credited this officer’s testimony, finding him “truthful,” and we accord great deference to the court’s credibility determinations (see People v Williams, 144 AD3d 1204, 1206 [2016]). As such, under the circumstances of this case, County Court properly denied the motion to suppress (see People v Pompey, 63 AD3d 612, 612-613 [2009], lv denied 13 NY3d 861 [2009], cert denied 559 US 1051 [2010]; People v Black, 250 AD2d 494, 494 [1998], lv denied 92 NY2d 922 [1998]).
 

 Defendant also argues that his videotaped statement in which he admitted that the gun was his should have been suppressed. We disagree. Haggerty’s suppression hearing testimony reveals that he interviewed defendant at the police station and, after being advised of his Miranda rights, defendant, on his own, admitted to possessing the gun and bringing it into the vehicle. Inasmuch as the record indicates that defendant’s admissions were spontaneous and not the product of coercion or deception, we find no error in County Court’s denial of that part of defendant’s motion seeking to suppress his videotaped statements (see People v Warrington, 146 AD3d 1233, 1234-1235 [2017], lv denied 29 NY3d 1038 [2017]; People v DeAngelo, 136 AD3d 1119, 1120 [2016]).
 

 Finally, we find no merit in defendant’s assertion that the sentence was harsh and excessive because it was greater than what was offered by the People during pretrial negotiations (see People v Stacconi, 151 AD3d 1395, 1398 [2017]). Sentencing rests in the sound discretion of the trial court, and we see no abuse of discretion or extraordinary circumstances warranting a reduction of the imposed sentence in the interest of justice (see People v Criss, 151 AD3d 1275, 1281 [2017], lv denied 30 NY3d 979 [2017]; People v Gunn, 144 AD3d at 1196).
 

 Peters, P.J., Garry, Devine and Clark, JJ., concur.
 

 Ordered that the judgment is affirmed.
 

 *
 

 The People introduced into evidence a video of defendant’s interview.