People v Espinoza (2019 NY Slip Op 05592)





People v Espinoza


2019 NY Slip Op 05592


Decided on July 11, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 11, 2019

109193

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Appellant,
v
SHAQUILLE ESPINOZA, Respondent.

Calendar Date: June 5, 2019

Before: Lynch, J.P., Clark, Mulvey, Aarons and Rumsey, JJ.


Paul Czajka, District Attorney, Hudson (James A. Carlucci of counsel), for appellant.
Alexander W. Bloomstein, Hillsdale, for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal from an order of the County Court of Columbia County (Koweek, J.), entered June 1, 2016, which partially granted defendant's motion to suppress evidence.
On March 4, 2015, a deputy sheriff in the Columbia County Sheriff's Office initiated a traffic stop of a vehicle that defendant was driving for speeding. After discovering that defendant's driver's license had been suspended and that there was a warrant for the passenger's arrest, the deputy sheriff placed defendant and the passenger under arrest and made arrangements for the vehicle to be towed. Prior to towing the vehicle, the deputy sheriff searched defendant's person and the vehicle. Allegedly, as the result of the search, the deputy sheriff found forged credit or debit cards not bearing defendant's name in defendant's wallet. He also apparently found similar credit or debits cards and a card reader in the trunk of the vehicle. Defendant was subsequently charged in an indictment with 75 counts of criminal possession of a forged instrument in the second degree and one count of criminal possession of a forgery device. Prior to trial, defendant moved to suppress any statements he made, as well as all physical evidence seized from the trunk and his wallet. Following a suppression hearing, County Court granted that portion of the motion seeking to suppress the physical evidence, and otherwise denied the motion. The People appeal.
We affirm. When the driver of a vehicle is lawfully arrested, "the police may impound the car, and conduct an inventory search, where they act pursuant to 'reasonable police regulations relating to inventory procedures administered in good faith'" (People v Walker, 20 NY3d 122, 125 [2012], quoting Colorado v Bertine, 479 US 367, 374 [1987]; see People v Gomez, 13 NY3d 6, 11 [2009]). To be valid, the inventory search must be "both reasonable and conducted pursuant to established police agency procedures that are designed to meet the legitimate objectives of the search while limiting the discretion of the officer in the field" (People v Peters, 49 AD3d 957, 958 [2008] [internal quotation marks and citations omitted], lv denied 10 NY3d 938 [2008]; see People v Galak, 80 NY2d 715, 719 [1993]). These specific objectives include "protecting an owner's property while it is in the custody of the police; insuring police [*2]against claims of lost, stolen, or vandalized property; and guarding police and others from dangerous instrumentalities that would otherwise go undetected" (People v Galak, 80 NY2d at 718; see People v Johnson, 1 NY3d 252, 256 [2003]; People v Cardenas, 79 AD3d 1258, 1259-1260 [2010], lv denied 16 NY3d 857 [2011]). "While incriminating evidence may be a consequence of an inventory search, it should not be its purpose" (People v Gomez, 13 NY3d at 11 [internal quotation marks and citations omitted]; see People v Johnson, 1 NY3d at 256; People v Leonard, 119 AD3d 1237, 1238 [2014]).
We agree with County Court that the People failed to satisfy their initial burden of establishing a valid inventory search. Although not fatal to the establishment of a valid inventory search (see People v Gomez, 13 NY3d at 11; People v Leonard, 119 AD3d at 1238-1239), the People did not admit the relevant tow and impound policy into evidence. The People also failed to ask any substantive questions of the deputy sheriff to establish that the policy was sufficiently standardized, that it was reasonable and that the deputy sheriff followed it in this case. The deputy sheriff only vaguely stated that he conducted the inventory search, radioed for a tow truck and completed the vehicle impound inventory report in accordance with the policy. Further, although the deputy sheriff filled out the impound inventory report, which indicates that the inventory search began at 9:55 a.m., he testified that the search began prior to that time and did not provide any explanation for the discrepancy. Moreover, there was contradictory testimony as to where the deputy sheriff found defendant's wallet — inside the vehicle or on defendant's person. Significantly, if defendant's wallet was inside the vehicle, as the deputy sheriff testified that it was, then the deputy sheriff allegedly took the wallet out of the vehicle but did not include it in the vehicle impound inventory report. In short, the People did not establish the circumstances under which searching the wallet and the closed trunk was justified under the policy (see People v Leonard, 119 AD3d at 1238-1239; compare People v Huddleston, 160 AD3d 1359, 1360-1361 [2018], lv denied 31 NY3d 1149 [2018]).
Even assuming the existence of a reasonable, standardized procedure, the record supports County Court's conclusion that the alleged inventory search was a "pretext" to locate incriminating evidence. The deputy sheriff testified that, prior to 9:55 a.m., he found defendant's wallet inside the vehicle and that the wallet contained credit cards that did not bear defendant's name. He denied ever giving the wallet to a Metropolitan Transportation Authority (hereinafter MTA) officer, who stopped some time during the incident to assist the deputy sheriff, or asking the MTA officer to do anything with the credit cards. However, defendant later admitted into evidence a recording of a phone call that took place at 9:30 a.m. in which the deputy sheriff states that the MTA officer had determined that the credit cards in defendant's wallet had been stolen from a particular drug store. In that regard, County Court, without making a determination as to the location of the wallet, found that the deputy sheriff seized defendant's wallet prior to the alleged inventory search. County Court concluded that the deputy sheriff believed that the vehicle may contain additional contraband, based upon the information provided by the MTA officer, and then conducted the search. According great deference to County Court's factual findings and credibility determinations in this regard (see People v James, 155 AD3d 1094, 1096 [2017], lv denied 30 NY3d 1116 [2018]; People v Williams, 144 AD3d 1204, 1206 [2016]), we find no basis upon which to disturb County Court's determination that the motivation behind the alleged inventory search was a "desire to locate contraband."
The People further assert that, if the wallet was found on defendant's person, the search of the wallet was incident to a lawful arrest and, therefore, the search of the vehicle was valid under the automobile exception to the warrant requirement. Such assertion is unpreserved and, were this argument properly before us, we would find it to be without merit (see People v Gokey, 60 NY2d 309, 312-314 [1983]; People v Anderson, 142 AD3d 713, 714-715 [2016]; People v Baksh, 113 AD3d 626, 628-629 [2014], lv denied 23 NY3d 1034 [2014]; compare People v Revander, 254 AD2d 625, 625-626 [1998], lv denied 92 NY2d 1053 [1999]). Accordingly, suppression of the physical evidence was proper.
Lynch, J.P., Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the order is affirmed.